Armando Maciel and Mariana F. Maciel, Plaintiffs-Appellants,
v.
Javed I. Qureshi and Shabana Qureshi, Defendants-Third-Party Plaintiffs-Respondents,
v.
Matt Thomas and First Weber Group, Inc., Third-Party Defendants.
No. 04-0698.
Court of Appeals of Wisconsin.
Opinion Filed: December 28, 2004.
Before Wedemeyer, P.J., Curley and Kessler, JJ.
¶1 PER CURIAM.
This case involves a failed real estate sale between Armando and Mariana Maciel (buyers) and Javed and Shabana Qureshi (sellers). The Maciels appeal from a judgment dismissing their complaint and awarding damages to the Qureshis.[1] We affirm the judgment.

BACKGROUND
¶2 The background facts are undisputed. The Qureshis, husband and wife, own an apartment building. Javed, a real estate broker, listed the building for sale by F&S Real Estate, Inc., which Javed was doing business as, using the Multiple Listing Service (MLS). The listing indicated that the selling agent was David Qureshi, that the owner was Javed Qureshi, and that the building was broker owned.[2]
¶3 Matt Thomas, a real estate sales agent for First Weber Group, showed the Maciels the property and drafted an offer to purchase. On October 31, 2002, the Maciels and the Qureshis entered into a contract for the sale of the apartment building. Closing was to occur on or before November 30. The contract did not indicate that Javed was both the listing agent and one of the sellers.
¶4 Pursuant to the contract, the sale was contingent on the Maciels obtaining a loan commitment within thirty days of acceptance. The Maciels also had the right to inspect the property within fifteen days.
¶5 The contract required the Qureshis to repave the parking lot within fourteen days of acceptance. They were also to provide the Maciels with an American Land Title Association (ALTA) owner's policy of title insurance commitment not less than three days before closing.
¶6 The closing was never scheduled. On December 13, the Maciels filed a complaint in circuit court alleging a single count: breach of contract to convey real property by seller. Although the complaint was filed against both of the Qureshis, the allegations relate primarily to the actions of Javed, who served as both the listing broker and seller of the apartment building. The Maciels alleged that Javed breached the "duty to exercise good faith in performing his contract obligations." Specifically, they alleged that Javed had
shown bad faith in: 1) nonfeasance in failing to complete the repaving work; 2) nonfeasance in failing to tender to the [Maciels] a title commitment policy 3 business days prior to the scheduled closing; 3) nonfeasance in failing to prepare closing documents and deliver same to the Buyer; 4) nonfeasance in failing to schedule a closing at which time and place title to the Seller's land would be transferred; 5) using his nonfeasance to create a situation wherein the Buyer was prevented from closing and then taking advantage of that failure to close by declaring the Buyer in breach.
The complaint sought specific performance, including the conveyance of the Qureshis' property to the Maciels, and "costs, disbursements, and attorneys fees, and such other and further relief as the court may deem just and equitable."
¶7 The Qureshis answered the complaint and also counterclaimed against the Maciels for slander of title, alleging the Maciels wrongfully filed an Affidavit of Interest in Property and a Lis Pendens on December 6 and 13, 2002, respectively.
¶8 Both parties moved for summary judgment. After the trial court denied both motions, the Qureshis filed a third-party summons and complaint against Matt Thomas and First Weber Group of Southeastern Wisconsin.[3]
¶9 A court trial was held November 12-13, 2003. The trial court, in its oral ruling from the bench, made the following findings: (1) the Maciels breached the contract because they did not have financing secured by November 30, 2002; (2) Javed did not interfere with the Maciels' performance of their obligation to obtain financing; (3) Javed breached the contract by not disclosing in the contract that he was both the owner and the listing broker, but this was not a material breach, because Javed did not use his status as a broker to gain any unfair advantage over the Maciels and his status as broker/owner was disclosed on the MLS listing sheet; (4) Javed's failure to complete the paving within fourteen days was not a material breach; (5) Javed did not breach the contract by failing to provide a title commitment, because there was never a closing date set from which to count backwards three business days; (6) Javed terminated the contract when the Maciels did not provide evidence of the loan commitment; and (7) the Maciels are not entitled to specific performance because they were not ready, willing and able to perform their obligations under the contract within the time specified in the agreement. Based on these findings, the trial court dismissed the Maciels' complaint.
¶10 The trial court also dismissed the third-party complaint against Matt Thomas and First Weber Group, as well as the Qureshis' counterclaim for slander of title. Finally, the trial court ordered that the Qureshis were entitled to keep the Maciels' earnest money as liquidated damages pursuant to the contract, minus $1200 that the Maciels paid for the home inspection, loan application and appraisal. This appeal followed.

DISCUSSION
¶11 The Maciels present two issues on appeal: (1) whether Javed is liable for violations of WIS. STAT. § 452.133(1)(a)-(b) and (3)(b) because he did not disclose that he had a real estate broker/owner interest in the property; and (2) whether the Maciels are entitled to a discretionary reversal pursuant to WIS. STAT . § 752.35.[4]

I. Alleged violations of WIS. STAT. § 452.133(1)(a)-(b) and (3)(b)
¶12 The Maciels argue that Javed is liable for violations of WIS. STAT . § 452.133(1)(a)-(b) and (3)(b) because he did not disclose that he was the broker/owner, failed to get written consent from the parties to serve as the broker for a property he owned, and affirmatively told the Maciels that the seller is the broker's client. Section 452.133 provides in relevant part:
Duties of brokers. (1) DUTIES TO ALL PARTIES TO A TRANSACTION. In providing brokerage services to a party to a transaction, a broker shall do all of the following:
(a) Provide brokerage services to all parties to the transaction honestly, fairly and in good faith.
(b) Diligently exercise reasonable skill and care in providing brokerage services to all parties.
....
(3) PROHIBITED CONDUCT. In providing brokerage services, a broker may not do any of the following:
....
(b) Act in a transaction on the broker's own behalf, on behalf of the broker's immediate family, or on behalf of any organization or business entity in which the broker has an interest, unless the broker has the written consent of all parties to the transaction.
¶13 The Qureshis urge this court not to consider the merits of this issue on grounds that it is raised for the first time on appeal. We have carefully reviewed the complaint, the trial transcript and the trial court's decision. We agree with the Qureshis that this issue is being raised for the first time on appeal and, therefore, decline to address it. See Wirth v. Ehly, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) ("[I]ssues not raised or considered in the trial court will not be considered for the first time on appeal."), superseded on other grounds by WIS. STAT. § 895.52.
¶14 The Maciels' complaint sought specific performance for breach of the contract to sell the apartment building. The complaint did not seek monetary damages. The Maciels did not allege that Javed, as the listing broker, had violated WIS. STAT . § 452.133(1)(a)-(b) and (3)(b). Indeed, we have not found a single reference to that statute in the pleadings or trial transcript. The closest the parties came to addressing any such claim was to discuss whether Javed's failure to affirmatively disclose his status as broker/owner in the contract was a material breach of the contract to sell the apartment building.
¶15 In the context of making an offer of proof, counsel for the Maciels argued that Javed "violated the Wisconsin Administrative Code and ... the Realtors Code of Ethics in failing to disclose his ownership of the property and obtaining written consent prior to entering into a contract with a customer...." However, this statement alone does not create a cause of action where it was not previously pled.
¶16 In addition, when the Maciels attempted to introduce evidence about Javed's alleged duty to affirmatively communicate with the Maciels' lender, the trial court clarified the issue being tried. The court explained:
We are talking about a duty in good faith in contract here.... There is not any allegation in the complaint that I can see of any breach by Mr. Qureshi of any duty that he owes as a broker in these circumstances....
....
[F]or purposes of this lawsuit at least, there is no allegation of breach of duty as a broker. You are claiming a breach of contract. You are claiming a breach [of] fiduciary relationship, breach of the covenant of good faith and fair dealing, but those allegations would be there if Mr. Qureshi were not a broker and we were in court on the same facts.
....
There is no allegation in the breach of the broker's duty. The allegation is Mr. Qureshi didn't act in good faith with regard to this contract and that his lack of good faith and what he did or failed to do constitutes a breach of that contract ... [Mr. Qureshi] has those duties to do what he was supposed to do with ... regard to the closing documents and the repaving. None of that flows from the fact that he is also a broker.
¶17 In response, counsel for the Maciels indicated that he understood. Counsel did not seek to amend the pleadings to add any claim for monetary damages based on allegations that Javed had violated WIS. STAT . § 452.133 or his general duties as a broker.
¶18 Based on our review of the record, we agree with the Qureshis that the Maciels' appellate argument with respect to WIS. STAT. § 452.133 is being improperly raised for the first time on appeal. It will not be addressed further.

II. Discretionary reversal
¶19 The Maciels argue that they are entitled to a reversal of the judgment based upon miscarriage of justice, citing WIS. STAT. § 752.35.[5] They argue:
Given the context of [Javed's] nondisclosure of broker/seller interest and that [Javed] had a second buyer "in the wings" who offered a much higher price, the trial court should have regarded [Javed's] statutory breaches and the Qureshi[s'] other breaches and failures as material breaches and awarded damages to the Maciels.
The Maciels also offer twelve allegations which, they contend, support their argument that the Qureshis materially breached the contract.
¶20 In effect, the Maciels are improperly attempting to relitigate the case in this court. "The trial court's findings of evidentiary facts will not be disturbed on appeal unless they are clearly erroneous." State v. Thomas J.W., 213 Wis. 2d 264, 268, 570 N.W.2d 586 (Ct. App. 1997); see also WIS. STAT. § 805.17(2). The Maciels suggest the findings are erroneous because they disagree with the trial court's credibility assessments. For example, they argue: "The trial court believed [Javed's] testimony that [he] was extremely concerned about time and that he could not wait two weeks after the last possible closing date according to the contract to sell the property.... However, the facts reveal that the sale did wait." The Maciels fail to recognize that when the trial court is the finder of fact and there is conflicting testimony, the trial court is the ultimate arbiter of credibility. See Gehr v. City of Sheboygan, 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977).
¶21 The Maciels have not convinced this court that any of the trial court's findings are clearly erroneous, or that the Maciels are entitled to a discretionary reversal because justice has miscarried. We affirm the judgment.

III. The Qureshis' allegations that the action and appeal are frivolous
¶22 In their brief, the Qureshis argue that the Maciels filed both a frivolous action and appeal. They seek an award of actual attorney fees for both the appeal and the underlying action.
¶23 Like the Maciels, the Qureshis have raised an issue for the first time on appeal. They did not move the trial court for sanctions based on the filing of the underlying action. They did argue that the Affidavit of Interest in Property and Lis Pendens were slanders of title because they were frivolous, but the trial court rejected this argument, concluding that the Maciels had argued for a good faith extension of the law. The Qureshis did not appeal that finding or the dismissal of their counterclaim. We decline to consider further their argument that the underlying action was frivolous. See Wirth, 93 Wis. 2d at 443.
¶24 We also disagree that the Maciels' appeal was frivolous. Although discretionary reversals based on clearly erroneous findings of fact are rare, the Maciels are entitled to argue the issue. Furthermore, the Qureshis' general allegation, without references to specifics, that the Maciels "have misquoted and misrepresented the record in arguing this appeal" is insufficient to justify the imposition of sanctions on appeal. We decline to award the Qureshis their attorney fees for the underlying action or this appeal.
By the Court.  Judgment affirmed.
NOTES
[1] The Maciels do not contest that portion of the judgment dismissing the third-party complaint against Matt Thomas and First Weber Group, Inc., who are not parties to this appeal.
[2] At trial, Javed testified that he had gone by "David" all of his life, but that his name is legally Javed. He testified that the name registered with the MLS is David.
[3] The Honorable Timothy G. Dugan denied the motions for summary judgment. The case subsequently was transferred to the Honorable Francis T. Wasielewski by judicial assignment.
[4] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[5] WISCONSIN STAT. § 752.35 provides:

Discretionary reversal. In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.